## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION, a New Jersey corporation, | ) ) ) ) | |
| | ) | CASE NO. 3:21-cv-00789-BJD-PDB |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ALPHATEC SPINE, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | | |

## DEFENDANT'S MOTION TO COMPEL DOCUMENT PRODUCTION AND DISCOVERY RESPONSES FROM PLAINTIFF

Pursuant to the  Federal Rules of Civil Procedure and M.D. Fla. Local Rule 3.01 (b) Defendant Alphatec Spine, Inc. ("**Defendant**" or "**ATEC**"), files this Motion to Compel Document Production and Discovery Responses from Plaintiff Howmedica Osteonics Corp. ("**Plaintiff**") (the "**Motion to Compel**").

## PRELIMINARY STATEMENT

This case has been on file for over a year, yet it remains unclear what Plaintiff's alleged "trade secrets" are.  In response to various interrogatories requesting identification of the allegedly-misappropriated trade secrets, Plaintiff lists boilerplate categories of generic information that fails to provide the substance behind the allegations.  Alphatec cannot properly defend itself from claims of misappropriation absent a specific identification of the information and material that has allegedly been misappropriated.  Consequently, this Motion to Compel is brought to force Plaintiff to finally clarify what—if anything—forms the basis of its trade secret allegations.[1]

In addition, and of equal importance, Plaintiff has failed to describe *how* it contends Alphatec actually misappropriated its—as yet unidentified—trade secrets. For example, in response to an interrogatory asking this fundamental question, Plaintiff responds by vaguely directing Alphatec to documents and testimony in

---

[1] Notably, any confidentiality objections or concerns are allayed by the fact that the parties have entered a Confidentiality Stipulation in this matter protecting the disclosure and dissemination of any confidential or sensitive information.

another litigation.   That answer is both substantively insufficient and expressly prohibited by the local discovery rules.  Plaintiff must state, in clear terms and not by mere reference, how it contends Defendant actually misappropriated its alleged trade secrets.

Additionally, Plaintiff has not properly responded to discovery targeted at its claims of tortious interference with business or customer relationships.   For example, in response to a document request calling for the production of any exclusivity agreements with the customers-at-issue, Plaintiff has stood on baseless 'relevance' objections.  But the existence—or non-existence—of such agreements is plainly relevant because whether a customer is free to leave Plaintiff for a competitor is an obvious defense to liability.  Consequently, Plaintiff's objections should be overruled and any such documents produced.

Prior to bringing this Motion, the parties have engaged in numerous meet-and-confer efforts but, despite these efforts, Plaintiff has failed to appropriately supplement its answers or its document production.   Therefore, Defendant respectfully requests Court intervention to adjudicate this discovery dispute, grant the Motion to Compel and, in so doing, allow Defendant to have the information and material necessary to properly defend this lawsuit.

## THE PARTIES MEET AND CONFER EFFORTS

Counsel for the respective parties met and conferred on August 4, 2022 via

telephone conference.  Prior to that, the parties exchanged letters on May 4, 2022

and May 27, 2022.  The parties also exchanged multiple emails between August

26, 2022 and September 1, 2022.

## THE DISCOVERY STANDARDS

Federal Rule 37 "allows any party 'on notice to other parties and all affected

persons … [to] move for an order compelling disclosure or discovery.'" *Gates v.*

*Travelers Commercial Ins. Co.*, No. 3:12-cv-349, 2012 WL 6186415, at *2 (M.D.

Fla. Dec. 12, 2012) (quoting Fed. R. Civ. P. 37(a)(1)); *see also* Fed. R. Civ. P.

37(a)(3)(B)(iii) (allowing for motion to compel if "a party fails to answer an

interrogatory submitted under Rule 33"); *id.* 37(a)(3)(B)(iv) (allowing for motion

to compel if "a party fails to produce documents … as requested under Rule 34").

District courts have "broad discretion and authority in managing pretrial discovery

matters to ensure that cases move to 'a reasonably and timely conclusion' with as

minimal 'waste of judicial and private resources' as possible." *Gates*, 2012 WL

6186415, at *2 (quoting *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th

Cir. 2002)).  It is well-established that "[t]he purpose of discovery is to require

disclosure of relevant information so that the resolution of the civil action is based

upon a full and accurate understanding of the facts." *Lesti v. Wells Fargo Bank*

*N.A.*, No. 2:11-cv-695, 2014 WL 12828853, at *1 (M.D. Fla. Feb. 20, 2014); *see*

*also United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958); *United*

*States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) ("The discovery process is designed to fully inform the parties of the relevant facts involved in their case.").

Discovery between civil litigants in federal court is governed by Federal Rule 26, which generally provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). "Relevancy" under Rule 26(b)(1) is broadly construed, and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Thus, "[w]hen the discovery requested appears relevant on its face, then the party objecting to the discovery based on relevance has the burden to show the requested discovery is not relevant." *Lesti*, 2014 WL 12828853, at *1 (citing *Unlimited Resources, Inc. v. Deployed Resources, LLC*, 2009 WL 212188, at *3 (M.D. Fla. Jan. 29, 2009)). "The burden on the resisting party is to specifically show how the objected-to request is unreasonable, irrelevant or otherwise unduly burdensome." *Gates*, 2012 WL 6186415, at *2 (citing *Panola Land Buyers, Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)).

A party's use of general, non-specific boilerplate objections are without merit. *See Hands on Chiropractic PL v. Progressive Select Ins. Co.*, No. 6:18-cv-192-Orl, 2018 WL 6983622, at *2 (M.D. Fla. Nov. 20, 2018); *Archer v. City of*

*Winter Haven*, No. 8:16-cv-3067, 2017 WL 5158142, at \*2 (M.D. Fla. Nov. 7, 2017) ("As made clear by the 2015 amendments to the Federal Rules of Civil Procedure, the use of boilerplate objections is improper."); *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 6:15-cv-49-Orl, 2016 WL 3167712, at \*2 (M.D. Fla. June 7, 2016) ("The Court does not consider frivolous, conclusory, general or boilerplate objections."); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ. P. 34(b)(2)(B) (requiring responding party to "state with specificity the grounds for objecting to the request, including the reasons").

Plaintiff's mostly boilerplate objections and deficient document production fail to pay heed to these clearly established rules governing civil discovery.

## THE RELEVANT DISCOVERY REQUESTS FOR WHICH PLAINTIFF SHOULD BE COMPELLED TO PROVIDE RESPONSIVE DOCUMENTS AND INFORMATION

On January 25, 2022, Defendant served their First Requests for Production and First Set of Interrogatories[2] upon Plaintiff, seeking production of certain documents. Relevant here, Defendant sought the following:

I.    **Request for Production No. 55**

**Request:** Any exclusivity agreements between You, on the one hand, and any of the customers whom You contend Defendant has tortiously interfered with, on the other hand.

---

[2] Annexed hereto as Exhibit 1 is a true and correct copy of the relevant portions of Plaintiff's Responses to Defendant's First Requests for Production and First Set of Interrogatories.

> **<u>Response:</u>** Plaintiff objects to this Request on the grounds that [*sic*] seeks documents that are not material and necessary in the prosecution or defense of this action. Plaintiff further objects to this Request on the grounds that it seeks confidential business information not relevant to the litigation. Plaintiff also objects to the definition of the term "Your" as overly broad and vague to the extent that it includes Stryker Spine's "past and present agents, representatives, attorneys, affiliated companies… and all other people acting at its request and/or on its behalf."

Plaintiff's unilateral contention that the documents are not "material or necessary" to this matter is not the appropriate standard under the discovery rules. Rather, Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to a claim or defense and proportional to the needs of the case.  Relevance is to be construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Rosenbaum v. Becker & Poliakoff, P,A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (citations omitted) (emphasis added). While Defendant understands, as Plaintiff states in its May 27, 2022 meet and confer letter, that "the scope of discovery is not without boundaries," *Lugo v. Hullett Env't Servs., Inc.*, 2011 WL 13298599, at *1 (M.D. Fla. May 4, 2011), and "the Federal Rules do not allow for limitless discovery," *Advantage Funding Corp., v. John Moriarty & Assoc. of Fla., Inc.*, 2017 WL 7792562, at *1 (S.D. Fla. Sept. 6, 2017), Plaintiff's assertion that the requested documents are not "relevant" is without merit.

Indeed, whether Plaintiff had any exclusivity agreements with any of the customers it contends Defendant tortiously interfered with is critical, and highly relevant, in multiple respects.  First, in its Complaint, Plaintiff repeatedly asserts that Defendant has tortiously interfered with its customer relationships. Plaintiff alleges that Defendant did this by, among other things, misappropriating its trade secrets.  Plaintiff's purported trade secrets (which, despite the fact that this matter has been pending for over a year, remain undefined) appear to include "customer information", "customer relationships", and "customer preferences" among other things.  *See, e.g.*, Complaint at ¶¶ 4, 7, 28.  Given such allegations, Defendant is entitled to know whether and how Plaintiff attempted to keep such customer information, relationships, and preferences—which, again, it claims comprise its trade secrets—"secret".   Plaintiff's efforts at maintaining such secrecy might include, without limitation, exclusivity or confidentiality agreements with actual or prospective customers. *See, e.g., Telmurian v. Piccolo*, 2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) (employer did not take adequate steps to protect its trade secrets, by for example, requiring its employees to enter into a confidentiality or nondisclosure agreement).

Second, whether and how Plaintiff took steps to ensure the exclusivity of any customer relationships-at-issue is relevant to the claims in this action because whether Plaintiff's customers were free to take their business to another provider

cuts against Plaintiff's claim that its customer relationships somehow constituted a protectable interest.

Finally, Plaintiff's objection to the Requests on the grounds they seek "confidential business information" is moot. The parties have entered a Confidentiality Stipulation. If Plaintiff has concerns about the confidentiality of information sought in discovery, then the Confidentiality Stipulation provides the process for maintaining that confidentiality. Defendant and its counsel will, of course, comply with the Confidentiality Stipulation.

## II.   Interrogatory No. 5

**Request:** For each such [Customer] relationship You identified in response to Interrogatory No. 4, identify and describe the manner in which You contend Defendant tortiously interfered with each such relationship.

**Response:** Plaintiff objects to this Interrogatory to the extent it seeks information exclusively in Defendant's possession. Plaintiff further objects to the definition of the term "You" as overly broad and vague to the extent that it includes Stryker Spine's "past and present agents, representatives, attorneys, and all other people acting at its request and/or on its behalf." Stryker Spine responds to this Interrogatory solely on its behalf. Subject to these objections, Plaintiff responds that Defendant has relied upon information gained by Stryker Spine's former sales representatives and associates during their association with Plaintiff to educate, assist and inform ATEC's sales representatives how to service Stryker Spine's clients. ATEC has also facilitated former Stryker Spine sales representatives and associates solicitation of and service to clients for which those individuals have non-competition and non-solicitation obligations owed to Stryker Spine during the period of those post-contract obligations, causing those clients to end or significantly reduce their relationship with Stryker Spine.

This response is so vague as to be meaningless.  Despite repeated requests, Plaintiff has refused to supplement this ambiguous response by answering *how* Defendant purportedly interfered with its customer relationships.  For instance, Plaintiff's answer is missing certain key information, such as what "information gained by Stryker Spine's former sales representatives" has Defendant purportedly relied upon?  What ATEC sales representatives have ostensibly been 'educated, assisted, and informed' on this alleged "information"?  How did this apparently unlawful "education" occur?  What specific non-solicit and non-competition obligations have been violated as part of these actions?  What clients "end[ed] or significantly reduce[d] their relationship with Stryker Spine"?  Ultimately, Plaintiff's response leaves more questions than answers.

It its May 27, 2022 meet and confer letter, Plaintiff states "[t]o the extent Defendant seeks clarifying or more detailed information, that information can be elicited through deposition testimony."  While the Federal Rules of Civil Procedure "do not limit a party to any one method of discovery," *Sprint Solutions, Inc. v. 4 U Cell, LLC*, No. 2:15-cv-605-FtM-38CM, 2016 WL 4815101, at *2 (M.D. Fla. Sept. 14, 2016) (internal quotations omitted), "[a party's] opportunity to engage in depositions does not excuse [Plaintiff's] duty to answer their interrogatory in good faith." *Id*.

## III.  Interrogatory No. 6

**Request:** With respect to the allegation in paragraph 70 of the Complaint, describe the facts supporting the allegation that "Stryker Spine has lost significant business to Alphatec" since Alphatec contracted with Lewers, Kessler, Caron, Hogge, Hyland, D'Abate, Haylett, and Thomas. In answering this Interrogatory, You must provide, without limitation: (i) the identity of the customers from whom business was lost; (ii) the amount of business lost with respect to each customer; and (iii) with respect to each customer identified, the factual basis for Your contention that the lost business was "directly caused by Alphatec's tortious interference," as alleged in paragraph 73 of the Complaint.

**Response:** Plaintiff objects to this Interrogatory to the extent it seeks information that would reveal attorney work product and/or information protected by attorney-client privilege, and on the ground that it seeks information that is in Defendants' possession, custody or control. Plaintiff further objects to Interrogatory No. 6 on the ground that it impermissibly poses multiple questions in one interrogatory. Plaintiff also objects to the definition of the term "You" as overly broad and vague to the extent that it includes Stryker Spine's "past and present agents, representatives, attorneys, and all other people acting at its request and/or on its behalf." Stryker Spine responds to this Interrogatory solely on its behalf. Subject to these objections, Plaintiff identifies the following customers as having reduced their Stryker Spine sales since William Lewers ("Lewers"), Lucas Kessler ("Kessler"), Paul Caron ("Caron"), Allison Hogge ("Hogge"), David Hyland ("Hyland"), Dominic D'Abate ("D'Abate"), Dustin Haylett ("Haylett") and Christopher Thomas ("Thomas") contracted with ATEC, in an amount to be determined at trial and without limitation to additional customers for whom discovery identifies that Stryker Spine's loss of business was due to Defendant's improper actions: [names of purported customers have been redacted][3].

_____

[3]  Names of purported customers have been redacted to conform with the parties' Confidentiality Stipulation.

In its response, Plaintiff fails to provide any information regarding the actual amount of revenue or business purportedly lost with respect to each customer. Rather, Plaintiff merely states that the customers have "reduced their Stryker Spine sales … in an amount to be determined at trial[.]"  However, Plaintiff does not need to gather further evidence or wait until trial to answer how much revenue it claims to have lost from customers whom or which it formerly did business as such information should be readily accessible to Plaintiff.  Consequently, Plaintiff must amend and supplement this answer.  *See, e.g., Ilerol Trucking, Inc. v. FedEx Ground Package Sys., Inc.*, No. 07-22817-CV-HUCK, 2008 WL 750008, at *1 (S.D. Fla. Mar. 19, 2008) (compelling plaintiff to respond to interrogatory requesting "a detailed damages calculation including the total amount sought, the factual basis for the amount and a description of the documents upon which the calculation was based"); *LaFleur et al. v. State Univ. Sys. of Fla. et al.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 963938, at *1 (M.D. Fla. Mar. 15, 2021) (plaintiffs' responses to interrogatory regarding damages was inadequate, and therefore, they were required to provide amended responses).

## IV.    Interrogatory No. 7

> **Request:** Specifically identify all of Your trade secrets and/or confidential and proprietary information that Defendant has allegedly "misappropriated" as alleged in paragraph 109 and elsewhere of the Complaint.

> **Response:** Plaintiff objects to the definition of the term "You" as

overly broad and vague to the extent that it includes Stryker Spine's "past and present agents, representatives, attorneys, and all other people acting at its request and/or on its behalf." Stryker Spine responds to this Interrogatory solely on its behalf. Subject to this objection, Plaintiff identifies the non-public information which Lewers, Kessler, Caron, Hogge, Hyland, D'Abate, Haylett and Thomas had access to or which was disclosed to them through their employment and/or association with Stryker Spine, including but not limited to: Stryker Spine's business strategy, sale data, product pricing, new product development and technology, customer lists, customer contact information, customer preferences concerning products, tools, equipment, implants and operating room procedure. Plaintiff reserves the right to supplement this response as more information becomes available through discovery.

This answer is so vague as to be meaningless. In an effort to "identify" its purported trade secrets, Plaintiff has provided Defendant with a laundry list of boilerplate categories of information, using sweeping, generic language from its distributor agreements. Plaintiff is required to describe the allegedly misappropriated trade secrets with reasonable particularity. *See, e.g., Levenger Co. v. Feldman*, 516 F.Supp.2d 1272, 1286-87 (S.D. Fla. 2007). This means that Plaintiff must do more than simply "identify broad categories of information, such as financial and technical data." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 Fed.Appx. 844, 848-49 (11th Cir. 2016). But that is exactly what has occurred, and, contrary to Plaintiff's assertion, Plaintiff has not identified the alleged misappropriated trade secrets at issue with the level of particularity required. Rather, Plaintiff identifying the alleged trade secrets at issue as "customer lists, customer preferences concerning products, tools, and equipment, implants and

operating room procedure, and pricing information," is exactly the kind of information that *DynCorp* frowned upon. *See Decurtis LLC v. Carnival Corp.*, No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 1968327, at *6 (S.D. Fla. Jan. 6, 2021) (recommending dismissal of trade secret claim where the trade secrets include "software, prototypes, hardware, database structures, operations procedures, testing plans, and other categorical descriptions" because "all information concerning a product ... is not a trade secret"); *see also, Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) (finding that categories such as "software," "financial data," "lists," and "information and records" are broad and generic categories of information and provide insufficient notice as to the actual trade secrets misappropriated).

Plaintiff cannot continue to obscure the actual "trade secrets"—if any exist—that are at issue in this lawsuit behind a veil of broad and generic boilerplate language. As previously stated, Defendant is entitled to know with specificity what trade secrets it is accused of allegedly misappropriating.

## V.   Interrogatory No. 9

> **Request:** For each alleged trade secret identified in response to Interrogatory No. 7, state the facts known to You evidencing Your contention that Defendant has "misappropriated" each of the alleged trade secrets.
>
> **Response:** Plaintiff objects to the definition of the term "You" as overly broad and vague to the extent that it includes Stryker Spine's "past and present agents, representatives, attorneys, and all other

people acting at its request and/or on its behalf" who are not parties to this litigation. Stryker Spine responds to this Interrogatory solely on its behalf. Subject to this objection, Plaintiff responds that since September 1, 2020, Stryker Spine has suffered a significant decline in sales to ATEC as a result of Defendant's solicitation and hire of Plaintiff's former sales representatives and associates. Documents and testimony produced in another litigation has shown that those sales representatives and associates used the confidential and proprietary information they learned while associated with Stryker Spine to service clients on behalf of ATEC and that ATEC has facilitated their use of such information in order to increase the company's sales.

In its response, Plaintiff inaccurately responds that "since September 1, 2022, Stryker Spine has suffered a significant decline in sales to ATEC as a result of Defendant's solicitation and hire of Plaintiff's former sales representatives and associates." Plaintiff continues to maintain that this response sufficiently answer this Request, however, to clarify – this Request is specific and narrowly tailored to try to understand *how* Defendant misappropriated Plaintiff's (albeit undefined) trade secrets. This is not a Request that seeks how it has allegedly suffered monetary damages.

Further, Plaintiff's response that "Documents and testimony produced in another litigation" apparently sufficiently show that trade secrets were misappropriated is improper and runs afoul of discovery rules. As stated in the Middle District of Florida's Civil Discovery Handbook, it is "insufficient to answer an interrogatory by reference to any extrinsic matter, such as "see deposition of James Smith" or "see insurance claim.";  *see  Rollins v. Banker Lopez*

*& Gassler*, No. 8:19-cv-2336-VMC-SPF, 2020 WL 1939396, at \*3 (M.D. Fla. Apr. 22, 2020) (defendant's motion to compel certain interrogatory responses granted where plaintiff's responses included language such as "[s]ee also, the transcript of Plaintiff's deposition" or similar language).

Further, Plaintiff's response that it can seek additional information through deposition testimony does not relieve Plaintiff of its duty to answer interrogatories in good faith. *See Sprint Solutions, Inc.*, 2016 WL 4815101, at \*2 (M.D. Fla. Sept. 14, 2016) (internal quotations omitted).

## CONCLUSION

For the reasons stated above, the Court should grant Defendant's Motion to Compel and order Plaintiff to provide complete, substantive responses to Defendant's discovery requests addressed herein.

## LOCAL RULE 3.01(G) CERTIFICATION

Defendant certifies that prior to bringing this motion it conferred with Plaintiff on the issues described herein. The parties exchanged written correspondence on the disputed discovery items and thereafter, on August 4, 2022, conducted a conference call to further confer. The parties were unable to agree on the resolution of the issues described in this motion.

Dated: September 15, 2022

Respectfully Submitted,

By: /s/ Christian E. Dodd
Christian E. Dodd
Florida Bar No. 93404
cdodd@hickeysmith.com
**HICKEY SMITH DODD LLP**
10752 Deerwood Park Blvd., Suite 100
Jacksonville, FL  32256
Telephone: 904.374.4238
Facsimile: 904.374.4238

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Stephen E. Fox (*specially appearing)*
Texas Bar No. 07337260
sfox@sheppardmullin.com
2200 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401

Attorneys for Defendant
ALPHATEC SPINE, INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of September 2022, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  All others will be served via electronic mail.

/s/ Christian E. Dodd
Christian E. Dodd