# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| **HOWMEDICA OSTEONICS CORP.**, a subsidiary of **STRYKER CORPORATION**, a New Jersey corporation, | )<br>)<br>)<br>)<br>)   **CASE NO. 3:21-cv-00789-BJD-PDB**<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>) |
| **ALPHATEC SPINE, INC.**, a Delaware corporation, | )<br>)<br>) |
| **Defendant.** | )<br>) |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## AND INCORPORATED MEMORANDUM OF LAW

# **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................... 1

LEGAL ARGUMENT ................................................................................................... 3

I.     DEFENDANT SHOULD BE COMPELLED TO SEARCH FOR AND PRODUCE DOCUMENTS THAT ARE HIGHLY RELEVANT TO THE ALLEGATIONS IN THE COMPLAINT ................. 3

      A.     Legal Standard ............................................................................... 3

      B.     Documents Concerning Defendant's Recruitment and Hiring of Certain Former Stryker Spine Workers are Relevant to Stryker Spine's Tortious Interference Claims ................. 4

      C.     Documents Concerning Defendant's Sales Growth Strategy and Related Budget Allocations Are Relevant to Stryker Spine's Claims of Tortious Interference and Trade Secret Misappropriation ........................................................... 6

      D.     Defendant's Strategy to Recruit New Customers, Including Records of Surgeon Trainings, Is Relevant to Stryker Spine's Claims of Tortious Interference with Business Relations .................... 9

      E.     The Employment Contracts of Defendant's Lead Recruiters Are Relevant to Ascertaining Defendant's Recruitment Strategy and Stryker Spine's Claim of Tortious Interference .............. 10

CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bagley v. Travelers Home & Marine Ins. Co.*,
　No. C16-0706 JCC, 2016 WL 4494463 (W.D. Wash. Aug. 25,
　2016) ................................................................................................................. 6, 7

*Farnsworth v. Procter & Gamble Co.*,
　758 F.2d 1545 (11th Cir. 1985) ............................................................................. 3

*Gonzalez v. Geico Gen. Ins. Co.*,
　No. 8:15-cv-0240-T-30TBM, 2016 WL 7732312, at *2 (M.D. Fla.
　Apr. 27, 2016), *subsequent determination on other grounds*, 2016
　WL 7732706 (M.D. Fla. Aug. 24, 2016) ................................................................ 5

*Howmedica Osteonics Corp. v. KG Surgical & Associates, Inc.*,
　Civ. A. No. 2:20-cv-14310 (KSH)(CLW) (D.N.J. filed Oct. 12,
　2020) ................................................................................................................... 11

*Kadiyala v. Pupke*,
　No. 17-80732-CIV, 2019 WL 3752654 (S.D. Fla. Aug. 8, 2019) ......................... 13

*Oppenheimer Fund, Inc. v. Sanders*,
　437 U.S. 340 (1978) ............................................................................................... 3

*Sides v. Advanced Disposal Servs. Nat'l Accounts, Inc.*,
　No. 3:15-CV-153-J-32PDB, 2015 WL 13333185 (M.D. Fl. Dec.
　11, 2015) (Barksdale, Mag. J.) ............................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 3

Fed. R. Civ. P. 34 ........................................................................................................ 1

Fed. R. Civ. P. 37 ........................................................................................................ 1

Pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure, Plaintiff Howmedica Osteonics Corp., a subsidiary of Stryker Corporation, ("Stryker Spine") respectfully requests that this Court compel Defendant Alphatec Spine, Inc. ("Defendant") to produce documents responsive to Stryker Spine's Second Request For the Production of Documents.

## PRELIMINARY STATEMENT

This litigation arises from Defendant's attempt to increase its share of the spinal implant market by tortiously interfering with Stryker Spine's contracts and business relationships and misappropriating its trade secrets. As Stryker Spine has expressly alleged in the Complaint, Defendant has engaged in a pattern and practice of luring Stryker Spine personnel to breach their contracts with Stryker Spine and misuse the trade secrets they learned while working for Stryker Spine for Defendant's benefit. Even Defendant's Chief Executive Officer has stated that Defendant's strategy for growth is based in part on the "Stryker [Spine] sales discipline" "prowess" and "sales force know-how." (O'Keefe Decl. Ex. 1.)

Despite these allegations and facts, more than one year after the Complaint was filed, Defendant still refuses to produce directly relevant documents concerning:

- Defendant's recruitment and hiring of certain former Stryker Spine sales representatives and key personnel (Request Nos. 7, 8, 9, 10, 16, 17 and 18);

- Defendant's sales growth strategies, and the actions it has taken to acquire new sales distributors and expand its market share (Request Nos. 14, 21 and 22);

- Defendant's client development strategy and the actions it has taken to acquire new customers, including its target surgeon lists and surgical trainings (Request Nos. 23 and 26); and

- The terms of employment for the two individuals most heavily involved in Defendant's recruitment of Stryker Spine personnel, including financial incentives related to their recruitment activities (Request Nos. 5 and 6).

Defendant's boilerplate objections to producing any documents that would shed light on its strategies or the extent of its misconduct are meritless.

For these reasons, as set forth in greater detail below, Stryker Spine respectfully seeks the Court's assistance in obtaining the foregoing categories of documents that directly relate to its claims.

## LEGAL ARGUMENT

I. **DEFENDANT SHOULD BE COMPELLED TO SEARCH FOR AND PRODUCE DOCUMENTS THAT ARE HIGHLY RELEVANT TO THE ALLEGATIONS IN THE COMPLAINT**

A. **Legal Standard**

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Rule 26(b)(1) states: "Parties may obtain discovery regarding *any non-privileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added).

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The documents Defendant refuses to produce directly "relate to the most significant contested issues in the case"—namely, Defendant's recruitment and growth strategies that provide the foundation for its tortious interference with Stryker Spine's business relations. *See Sides v. Advanced Disposal Servs. Nat'l Accounts, Inc.*, No. 3:15-CV-153-J-32PDB, 2015 WL 13333185, at *1 (M.D. Fl. Dec. 11, 2015) (Barksdale, Mag. J.) (granting motion to compel discovery related "to the most significant contested issues" of the case).

3

**B.      Documents Concerning Defendant's Recruitment and Hiring of Certain Former Stryker Spine Workers are Relevant to Stryker Spine's Tortious Interference Claims**

Document Request Nos. 7, 8, 9, 10, 16, 17 and 18[1] seek documents concerning Defendant's recruitment and hiring of four former Stryker Spine employees and sales representatives outside of the Florida Region, including correspondence between those individuals and Defendant's recruitment team, as well as Defendant's hiring and recruitment files.

Defendant asserted baseless boilerplate objections stating that the requests are overly broad, unduly burdensome, lacking reasonable particularity and not proportional to the needs of the case because former Stryker Spine employees and sales representatives located outside the Florida Region are not "relevant to any claims or defenses asserted by the parties in this matter." Defendant's objections are incorrect.

As expressly alleged in the Complaint, Defendant's interference with Stryker Spine's contracts and business relations in the Florida Region is part of a larger scheme to tortiously interfere with Stryker Spine's nationwide business. Specifically, Stryker Spine unequivocally alleged in the Complaint that Defendant's actions in the Florida Region "are representative of a *nation-wide scheme* to

---

[1] Attached as Exhibit 2 to the Declaration of Joseph C. O'Keefe is a copy of Defendant's Responses to Plaintiff's Second Set of Document Requests, which are the subject of this motion.

misappropriate Stryker Spine's trade secrets and tortiously interfere with its customer relationships by inducing Stryker Spine *personnel* to leave Stryker and share the company's trade secrets" (Compl. ¶ 7) (emphasis added.) Further, Stryker Spine alleged in the Complaint that "Alphatec's efforts are part of a *wide-ranging*, malicious and *systemic plan* which has resulted in significant reductions in Stryker Spine's sales force in Florida *and other areas of the country*." (Compl. ¶ 4) (emphasis added.)

Documents relating to Defendant's larger-scale recruitment efforts, including recruitment outreach, contracts and other hiring documents, will provide evidence that Defendant's actions in the Florida Region are part of the broader unlawful scheme described in the Complaint. Thus, they are discoverable. *See Gonzalez v. Geico Gen. Ins. Co.*, No. 8:15-cv-0240-T-30TBM, 2016 WL 7732312, at *2 (M.D. Fla. Apr. 27, 2016), *subsequent determination on other grounds*, 2016 WL 7732706 (M.D. Fla. Aug. 24, 2016) (granting motion to compel documents where the documents at issue "may not bear directly on the handling of the [specific plaintiff's] claim," but arguably relate to the plaintiff's overall theory of the case and would help explain a larger scheme and strategy by the defendants).

Moreover, the fact and extent of Defendant's efforts to tortiously interfere with Stryker Spine's business outside the Florida Region is probative of Defendant's intent and conduct within Florida, which relate to elements of Stryker Spine's

5

claims. The fact that Defendant has poached Stryker Spine personnel in other geographic locations—such as Chicago, New Jersey and Pennsylvania—within 18 months of recruiting the Florida Region distributors shows Defendant is executing a systematic plan to interfere with Stryker Spine's business, which is what is alleged in the Complaint.

For these reasons, Stryker Spine requests that this Court compel Defendant to produce documents responsive to Request Nos. 7, 8, 9, 10, 16, 17 and 18.

### C. Documents Concerning Defendant's Sales Growth Strategy and Related Budget Allocations Are Relevant to Stryker Spine's Claims of Tortious Interference and Trade Secret Misappropriation

Document Request Nos. 14, 21 and 22 seek documents regarding Defendant's sales growth strategies and any related reports or budgetary information which show the amount of money Defendant has expended to recruit new distributors and increase its share of the spinal implant market.

Defendant asserted boilerplate objections of over-breadth, burden, confidentiality, relevance and proportionality. Again, these generalized objections are unavailing.

One key way in which Defendant is alleged to have effectuated its unlawful scheme and grow its sales is through its systematic and repeated recruitment of Stryker Spine's distributors and sales representatives, and such information is necessarily discoverable based on the Complaint allegations. *See Bagley v.*

6

*Travelers Home & Marine Ins. Co.*, No. C16-0706 JCC, 2016 WL 4494463, at *6 (W.D. Wash. Aug. 25, 2016) (granting motion to compel documents related to company goals, programs and incentives at a nation-wide level, which "*may have existed* to encourage employees to help the company meet [those] goals" in a dispute over the company's handling of a specific insurance claim) (emphasis added).

More specifically, the documents Stryker Spine seeks relating to Defendant's tortious nation-wide recruitment and hiring scheme is discoverable in light of the following:

- As pled in the Complaint, within a three-month time period, Defendant induced three separate Stryker Spine distributors and eight sales representatives or associates to break their contracts with Stryker Spine. (Compl. ¶¶ 51-53, 55-57, 91, 97.)

- Defendant produced documents that show that Defendant's plan was to thereafter recruit additional Stryker distributors. (O'Keefe Decl. ¶ 4.)[2]

- Defendant induced additional Stryker Spine distributors, and targeted and hired key Stryker Spine personnel. (O'Keefe Decl. ¶ 5.)

---

[2] Stryker Spine is not including the specific content of the documents referred to herein because those documents were marked by Defendant as "Confidential" under the Parties' Confidentiality Stipulation and thus cannot be quoted or provided to the Court via public filing. If the Court would like to review them, however, Stryker Spine can provide them directly to Chambers or, alternatively, file them under seal, with the Court's permission.

- Publicly available presentations delivered by Defendant and documents they produced in discovery show that targeting Stryker Spine personnel is a significant part of Defendant's overall sales growth strategy. (O'Keefe Decl. Ex. 1.)

- Defendant has offered Stryker Spine's former representatives lucrative compensation packages (*id.* ¶ 6), far exceeding market rates in the industry, as a means to lure Stryker Spine personnel to breach their contracts with Stryker Spine, begin working for Defendant, and bring with them customer relationships and trade secrets they learned as a result of their association with Stryker Spine (*id.* ¶ 7.)

In sum, the foregoing categories of documents, which relate to Defendant's sales growth strategies and the steps it has taken to execute those strategies, including expenditures, will show that Defendant's competitive hires from Stryker Spine are part of a broader scheme to grow its market share by tortiously interfering with Stryker Spine's contracts and business relationships. Many of those documents will also identify the relevant individuals involved in Defendant's sales growth strategies which will likely streamline depositions and expose the extent to which Defendant's increase in sales have a direct correlation to the same contracts and business relations Stryker alleges Defendant tortiously interfered with. That, in turn, will also facilitate damages calculations.

Accordingly, Defendant should be compelled to produce documents in response to Document Request Nos. 14, 21 and 22.

### D. Defendant's Strategy to Recruit New Customers, Including Records of Surgeon Trainings, Is Relevant to Stryker Spine's Claims of Tortious Interference with Business Relations

Document Request Nos. 23 and 26 seek documents concerning Defendant's strategy to recruit new customers, including records of surgeon trainings within the Florida Region.

Defendant has refused to produce responsive documents, relying upon boilerplate objections of over breadth, burdensomeness and relevance. But those objections are meritless because whether Stryker Spine's customers appear on Defendant's target surgeon lists for surgeon trainings, and whether the timing of those trainings align with Defendant's recruitment of Stryker Spine's distributors and sales representatives, is directly relevant to Stryker Spine's claim that Defendant tortiously interfered with Stryker Spine's business.

The premise of this litigation is that Defendant tortiously interfered with Stryker Spine's business relations and misappropriated its trade secrets in order to gain access to Stryker Spine's clients and gain an unfair competitive advantage. Defendant's publicly available financial report states, "[w]e believe that one of the most effective ways to introduce and *build market demand* for our products is by *training and educating spine surgeons*." (O'Keefe Decl. Ex. 3) (emphasis added.)

9

Defendant's publicly available presentations and financial reports also reference "Surgeon Course" trainings that Defendant uses as recruitment tools. (O'Keefe Decl. Ex. 4.) In addition, documents Defendant produced in this litigation show that Defendant recognized new and significant increases in revenue from Stryker Spine's clients after recruitment of Stryker Spine's former distributors. (O'Keefe Decl. ¶ 10.) If Defendant used its training courses as a tool to target Stryker Spine's customers at the same time or within one year after it recruited the former Stryker Spine sales representatives that serviced those customers, that information is evidence not only of Defendant's tortious interference with Stryker Spine's business, but also misappropriation of Stryker Spine's trade secrets, including its customer lists.

The foregoing compels the conclusion that Stryker Spine is entitled to evidence showing what Defendant's strategy is to increase new customer recruitment.

### E. The Employment Contracts of Defendant's Lead Recruiters Are Relevant to Ascertaining Defendant's Recruitment Strategy and Stryker Spine's Claim of Tortious Interference

Document Request Nos. 5 and 6 seek the complete employment contract(s) for Emory Rooney, Defendant's Vice President of Sales East, and David Sponsel, Defendant's Executive Vice President.

Defendant objected to the requests as overly broad, unduly burdensome, lacking reasonable particularity, and not proportional to the needs of the case on the ground that the requests seek employment contracts with individuals who are not parties to the litigation.

Defendant's boilerplate objections—*e.g.*, that producing two contracts are unduly burdensome and not proportional to the needs of the case, and that the request if overly broad—are baseless in light of the limited scope of the Requests and the central role both Sponsel and Rooney have played in Defendant's recruitment efforts. Sponsel and Rooney are Defendant's Executive Vice President of Sales, and Vice President of Sales, East, respectively. They are also both former Stryker Spine managers.

Testimony in a parallel litigation that is currently pending in the United States District Court for the District of New Jersey[3] revealed that Rooney and Sponsel were instrumental in Defendant's efforts to recruit Stryker Spine's former distributors and sales representatives (O'Keefe Decl. Ex. 5, Kessler Dep. Tr. at 51-52; 66-70; 217-19; O'Keefe Decl. Ex. 6, Lewers Dep. Tr. at 36-37; 42-43; 49; 64-65.) Indeed, both Rooney and Sponsel attended numerous recruitment meetings on behalf of

---

[3] *Howmedica Osteonics Corp. v. KG Surgical & Associates, Inc.*, Civ. A. No. 2:20-cv-14310 (KSH)(CLW) (D.N.J. filed Oct. 12, 2020) ("*KG Litigation*"). To promote efficiency, the Parties entered into an agreement that provides for the use of deposition testimony procured in the *KG litigation* to be used in this litigation.

11

Defendant and conducted the contract negotiations with Stryker Spine's former sales representatives as part of Defendant's tortious scheme. (O'Keefe Decl. Ex. 5, Kessler Dep. Tr. at 51-52; 66-70; 217-19; O'Keefe Decl. Ex. 6, Lewers Dep. Tr. at 36-37; 42-43; 49; 64-65.)

Further, based on Defendant's publicly available financial records, which include Sponsel's 2020 and 2021 earnings,[4] Stryker Spine has a legitimate reason to believe that Sponsel, and possibly Rooney, were offered financial incentives for increasing Defendant's sales. If that is true, it evinces an incentive to recruit and hire former Stryker Spine sales representatives—especially given that both individuals are intimately familiar with Stryker Spine's business model and the successes Stryker Spine has achieved based upon its sales representative and distributor relationships.

Additionally, given the extensive role Rooney and Sponsel played in Defendant's recruitment process, Stryker Spine has noticed their respective depositions. Stryker Spine is entitled to collect basic background information pertaining to these highly relevant witnesses prior to their deposition, as well as

---

[4] While Sponsel's employment agreement is attached as an exhibit to Defendant's 10K SEC filing (which is publicly available and was produced by Defendant on September 30, 2022), the agreement does not contain any information on Sponsel's bonus structure. If his bonus structure is tied to his recruitment of Stryker Spine sales representatives, it would directly relate to the claims asserted in the Complaint. Further, it is unclear whether any information has been redacted from the publicly available agreement and/or whether the agreement was ever amended.

documents that may contain information relevant to the claims in this litigation. *See Kadiyala v. Pupke*, No. 17-80732-CIV, 2019 WL 3752654, at *4 (S.D. Fla. Aug. 8, 2019) (compelling production of documents that could be useful during deposition and finding that party "should have the opportunity to review the documents before they depose [the deponent]").

Last, to the extent Defendant has expressed concern about the confidential nature of the documents responsive to Request Nos. 5 and 6 (or *any* request for that matter), the Confidentiality Stipulation entered in this case will properly shield such sensitive information from disclosure to the public or Stryker Spine (if appropriate). *See id.* at *3 (fact that document contains confidential information does not "bar its production in discovery" especially where "a stipulated protective order has been entered into by the parties").

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Stryker Spine respectfully requests that this Court order Defendant to produce documents responsive to Plaintiff's Document Request Nos. 5, 6, 7, 8, 9, 10, 14, 16, 17, 18, 21, 22, 23, and 26, and provide all other relief it deems just.

Dated: November 17, 2022
     New York, New York

                                            Respectfully submitted,

13

/s/*Joseph C. O'Keefe*
Joseph C. O'Keefe, Esq.
(*admitted pro hac vice*)
Edna D. Guerrasio, Esq.
(*admitted pro hac vice*)

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
jokeefe@proskauer.com
eguerrasio@proskauer.com
*Attorneys for Plaintiff*

15

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for Plaintiff has conferred with counsel for Defendant regarding this Motion and confirmed that after numerous telephonic and e-mail meet and confers, the parties do not agree on a resolution to the issues raised herein.